IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
WESTERN DIVISION

| | | |
|---|---|---|
| SAMMY EDWARD SIMPSON, | ] | |
| | ] | |
| Plaintiff, | ] | |
| | ] | |
| vs. | ] | 7:10-CV-3084-LSC |
| | ] | |
| STATE OF ALABAMA DEPARTMENT OF HUMAN RESOURCES, et al., | ] ] ] ] | |
| Defendants. | ] | |

MEMORANDUM OF OPINION

I.   Introduction.

Defendants filed the pending motions (Docs. 6, 13) to dismiss Plaintiff Simpson's original and amended *pro se* complaints.  (Docs. 1, 7.)   In his complaint, Simpson alleges that Defendants have violated the Fair Labor Standards Act ("FLSA") 29 U.S.C. § 201 *et seq.*, 42 U.S.C. § 1983 and the Rehabilitation Act, 29 U.S.C. § 701 *et seq.* (Doc. 7.)  He claims retaliation against his bringing a prior lawsuit and names as defendants several county human resource departments across Alabama and their directors. Defendants' motion argues that Simpson's claims fail primarily due to

Eleventh Amendment Immunity for the agencies and failure to state a claim against the individual defendants. (Doc. 13 at 2-3.) The issues raised in Defendants' motions are now ripe for decision. After considering the presented legal arguments and evidence, the motions are due to be granted in part.

II.   Facts and Procedural History.[1]

From 2006-2010, Plaintiff Sammy Simpson sought a social work position with the Alabama Department of Human Resources ("ALHR") and had his name on the Alabama State Personnel Register. He was eligible for interviews with four counties: Mobile, Baldwin, Marshall, and Jefferson. (Doc. 1 at 3.) Simpson filed a lawsuit against the ALHR in 2006, alleging discrimination based on disability. Simpson lost that lawsuit, eventually exhausting his appeals on December 14, 2009.

During his lawsuit, Simpson interviewed for social work positions with the ALHR. But, after his lawsuit, no department interviewed him for positions that he sought in Mobile, Baldwin, Marshall, and Jefferson

---

[1] Unless otherwise indicated, the facts are taken from Plaintiff's original and amended *pro se* complaints. (Docs. 1, 7.)

Counties.

In early April 2010, Simpson inquired of Alabama State Personnel Department and found out that Mobile, Baldwin, and Jefferson Counties had hired eight total social workers since December 2009. A few days later, the Personnel Department, via mail, placed Simpson on inactive status because he had not informed the Jefferson County Department of Human Resources ("JCHR") of his availability. (Doc. 1 at 16.) Simpson views this correspondence as a result of his inquiry:

> Simpson holds firm that in Retaliation by the defendant for requesting hiring information to much fishy factual and circumstantial evidence appears that it was the defendant who reacted to Simpson's request for information in a reckless Retaliatory adverse action.

(Doc. 1 at 6.)

Also while Simpson was on the Personnel Register, Etowah County hired "a convicted felon, who additionally lost custody of their child, has no state licensure, and lied about county of residency to and by astonishment hired to work in child welfare . . . ." (Doc. 1 at 8.) Simpson, conversely, maintains a license issued by the Alabama Board of Social Work Examiners. He also holds other credentials—a bachelor degree in social work, fifteen

graduate hours in special education, and the necessary continuing education credits to maintain his license.

Simpson brought suit in November 2010 naming the ALHR, the Mobile County Department of Human Resources ("MBCHR"), the Baldwin County Department of Human Resources ("BCHR"), the JCHR, and the Marshall County Department of Human Resources ("MCHR"), collectively ("HR Departments").  His amended complaint adds six individuals in their official and individual capacity: Jon Costa (Etowah County Department of Human Resources Director), Wayne Sellers (MCHR Director), Nancy Buckner (ALHR Director), Trish Muscolino (JCHR Director), Latonya Wells (BCHR Director), and Rose Johnson (MCHR Director).  Simpson now asks that the Court determine the following claims: (1) Retaliation under the FLSA; (2) Retaliation under the Rehabilitation Act;[2] (3) Retaliation through *Ex parte Young*, 209 U.S. 123 (1908); and (4) Retaliation through procedure under Section 1983.

III.    Standard of Review.

---

[2]Though he now argues retaliation under the Rehabilitation Act, Simpson did not plead it.  But because of the lenient standard provided to *pro se* plaintiffs, Defendants and this Court address his claims for retaliation under the Rehabilitation Act.

A defendant may move to dismiss a complaint pursuant to Federal Rule of Civil Procedure 12(b)(6) if the plaintiff has failed to state a claim upon which relief may be granted. "The standard of review for a motion to dismiss is the same for the appellate court as it [is] for the trial court." *Stephens v. Dep't of Health & Human Servs.*, 901 F.2d 1571, 1573 (11th Cir. 1990). "When considering a motion to dismiss, all facts set forth in the plaintiff's complaint 'are to be accepted as true and the court limits its consideration to the pleadings and exhibits attached thereto.'" *Grossman v. Nationsbank, N.A.*, 225 F.3d 1228, 1231 (11th Cir. 2000)(quoting *GSW, Inc. v. Long Cnty.*, 999 F.2d 1508, 1510 (11th Cir. 1993)). All "reasonable inferences" are drawn in favor of the plaintiff. *St. George v. Pinellas Cnty*, 285 F.3d 1334, 1337 (11th Cir. 2002).

To survive a 12(b)(6) motion to dismiss for failure to state a claim, the complaint "does not need detailed factual allegations." *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 545 (2007).[3]   But the "plaintiff's obligation to

---

[3]In *Bell Atlantic Corp. v. Twombly*, the U.S. Supreme Court abrogated the oft-cited standard that "a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief" set forth in *Conley v. Gibson*, 355 U.S. 41 (1957). *Bell Atl. Corp.*, 550 U.S. at 560-63. The Supreme Court stated that the "no set

provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do. Factual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Id*. at 555 (internal citations omitted). The plaintiff must plead "enough facts to state a claim that is plausible on its face." *Id*. at 570. Unless a plaintiff has "nudged [his] claims across the line from conceivable to plausible," the complaint "must be dismissed." *Id*.

"[U]nsupported conclusions of law or of mixed fact and law have long been recognized not to prevent a Rule 12(b)(6) dismissal." *Dalrymple v. Reno*, 334 F.3d 991, 996 (11th Cir. 2003) (quoting *Marsh v. Butler Cnty., Ala.*, 268 F.3d 1014, 1036 n.16 (11th Cir. 2001)). And "where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'" *Ashcroft v. Iqbal*, --- U.S.

---

of facts" standard "is best forgotten as an incomplete, negative gloss on an accepted pleading standard: once a claim has been stated adequately, it may be supported by showing any set of facts consistent with the allegations in the complaint." *Id*. at 563.

----, 129 S. Ct. 1937, 1950 (2009) (quoting Fed. R. Civ. P. 8(a)(2)). Therefore, the U.S. Supreme Court suggested that courts adopt a "two-pronged approach" when considering motions to dismiss: "1) eliminate any allegations in the complaint that are merely legal conclusions; and 2) where there are well-pleaded factual allegations, 'assume their veracity and then determine whether they plausibly give rise to an entitlement to relief.'" *American Dental Ass'n v. Cigna Corp.*, 605 F.3d 1283, 1290 (11th Cir. 2010) (quoting *Iqbal*, 129 S. Ct. at 1950). Importantly, "courts may infer from the factual allegations in the complaint 'obvious alternative explanation[s],' which suggest lawful conduct rather than the unlawful conduct the plaintiff would ask the court to infer." *Id*. (quoting *Iqbal*, 129 S. Ct. at 1951-52). However, "[a] complaint may not be dismissed because the plaintiff's claims do not support the legal theory he relies upon since the court must determine if the allegations provide for relief on any possible theory." *Brooks v. Blue Cross & Blue Shield of Fla., Inc.*, 116 F.3d 1364 (11th Cir. 1997).

IV.   Analysis.

This Court initially notes that "*pro se* pleadings are held to a less

stringent standard than pleadings drafted by attorneys and will, therefore, be liberally construed." *Hughes v. Lott*, 350 F.3d 1157, 1160 (11th Cir. 2003). But "[i]n examining the factual allegations in the complaint, we must keep in mind the heightened pleading requirements for civil rights cases, especially those involving the defense of qualified immunity." *Gonzalez v. Reno*, 325 F.3d 1228 (11th Cir. 2003). Defendants' motion to dismiss argues that immunity protects them in their official capacities and that Simpson's complaint fails to state a claim under the FLSA, the Rehabilitation Act, and, thus, Section 1983.

    A.    FLSA.

Defendants argue that Eleventh Amendment immunity shields the HR Departments and the individuals in their official capacities, that *Ex parte Young* does not provide an exception, and that Simpson, regardless, cannot make out an FLSA retaliation claim.

The Eleventh Amendment of the United States Constitution prevents federal jurisdiction for suits against nonconsenting states. *See, e.g.*, *Nev. Dept. of Human Res. v. Hibbs*, 538 U.S. 721, 726 (2003). Alabama, in general, does not consent: "the State of Alabama shall never be made a

defendant in any court of law or equity." Ala. Const. of 1901, art. I, § 14. Departments, agencies, and all other instrumentalities of states share in the same Eleventh Amendment immunity as the states themselves. *See Pennhurst State Sch. & Hosp.*, 465 U.S. 89, 100 (1984). State law determines whether an entity constitutes an agency, department, or instrumentality of the state. *Harden v. Adams*, 760 F.2d 1158, 1163 (11th Cir. 1985). In Alabama, the state department and the county departments of human resources are state agencies. *See Ex parte Trawick*, 959 So. 2d 51, 55 (Ala. 2006). The HR Departments thus have Eleventh Amendment immunity from suit. In addition, actions against state officers in their official capacities are deemed to be against the officer's department. *See id.* Immunity applies to Defendants Costa, Sellers, Buckner, Muscolino, Wells, and Johnson in their official capacities.

"Congress may, however, abrogate such immunity in federal court if it makes its intention to abrogate unmistakably clear in the language of the statute and acts pursuant to a valid exercise of its power under § 5 of the Fourteenth Amendment." *Nev. Dept.*, 538 U.S. at 726. By enacting the FLSA, Congress did not validly abrogate the states' sovereign immunity to

suits by private individuals. *See Keeler v. Fla. Dept. of Health, Div. of Disability Determinations*, No. 10-10987, 2010 WL 3724476, at *3 (11th Cir. Sept. 24, 2010). Immunity thus applies to the HR Departments and the individuals in their official capacities. Simpson may also not bring a claim against the individual defendants in their individual capacities. "[A] public official sued in his individual capacity is not an 'employer' subject to individual liability under the FLSA." *Wascura v. Carver*, 169 F.3d 683, 686 (11th Cir. 1999).

Even if immunity did not protect the HR departments and the individual defendants in their official capacities and even if the individuals did fall within the definition of employer, Simpson would still fail to state an FLSA retaliation claim. The FLSA prevents employers from discharging or discriminating against employees that "filed any complaint or instituted or caused to be instituted any proceeding under or related to *this chapter*, or has testified or is about to testify in any such proceeding, or has served or is about to serve on an industry committee." 29 U.S.C. § 215(a)(3) (emphasis added). Simpson must thus have attempted to engage in activity protected by the FLSA. *See McKenzie v. Renberg's Inc.*, 94 F.3d 1478, 1486-

87 (10th Cir. 1996) ("[Plaintiff] therefore lacks an essential ingredient of a retaliation claim; that is, [he] did not . . . assert any rights under the FLSA."). He has not. Rather, Simpson asserts that the protected activity occurred under the Rehabilitation Act, instead of the FLSA:

> Simpson is entitled to bring a complaint of Retaliation to this court due to having a prior lawsuit Against Alabama Department of Human Resources for disability discrimination under section 504 of the Rehabilitation Act of 1973 which classes Simpson in a 'protected activity' for having had the prior lawsuit against the defendant.

(Doc. 1 at 5.) Simpson did not exercise any FLSA rights in the previous lawsuit. Nor has he alleged that he asserted an FLSA right. He thus cannot state a claim for FLSA retaliation.

   B.   Rehabilitation Act.

Defendants argue[4] that Simpson has failed to allege "his disability, how that disability was known to Defendants, what protected activity he was

---

[4] The HR Departments do not argue immunity protects them; the individual defendants do not argue immunity protects them in their official capacities. Immunity does not apply to Rehabilitation Act claims, when, as here, Defendants do not dispute receiving federal funds. *See Garrett v. Bd. of Tr. of Univ. of Ala.*, 344 F.3d 1288, 1293 (11th Cir. 2003) ("Section 2000d-7 unambiguously conditions the receipt of federal funds on a waiver of Eleventh Amendment immunity to claims under section 504 of the Rehabilitation Act."). Because immunity does not apply, neither does *Ex parte Young*, an exception to immunity. *See Fla. Ass'n of Rehab. Facility, Inc. v. State of Fla. Dept. of Health & Rehab. Serv.*, 225 F.3d 1208, 1219 (11th Cir. 2000).

engaged in, how they knew it and how they retaliated against him." (Doc. 13 at 15.) Section 504 of the Rehabilitation Act prevents any program or activity receiving federal funds from subjecting any disabled individual to discrimination. 29 U.S.C. § 794(a). The Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12111 *et seq.*, supplies the standards for the Rehabilitation Act. *See* 29 U.S.C. § 794(d). The ADA's anti-retaliation provision provides that "[n]o person shall discriminate against any individual because such individual has opposed any act or practice made unlawful by this chapter." 42 U.S.C. § 12203(a). To establish a prima facie retaliation case, plaintiff must show that (1) he engaged in statutorily protected activity under the Rehabilitation Act, (2) he suffered an adverse employment action, and (3) that the first event caused the second. *Shannon v. Postmaster General of U.S. Postal Service*, 335 Fed. App'x 21, 26 (11th Cir. 2009); *Brochu v. City of Riviera Beach*, 304 F.3d 1144, 1155 (11th Cir. 2002).

The statute protects employees who oppose "any practice made an unlawful employment practice by this subchapter" or who "made a charge, testified, assisted, or participated in any manner in an investigation,

proceeding, or hearing under this subchapter." 42 U.S.C. § 2000e-3(a). Simpson has alleged the first element: His 2006 lawsuit claimed that the ALHR, JCHR, and the MCHR discriminated against him, violating the Rehabilitation Act. Regarding the second element, an adverse employment action comprises conduct that "clearly might deter a reasonable employee from pursuing a pending charge of discrimination or making a new one." *Crawford v. Carroll*, 529 F.3d 961, 974 (11th Cir. 2008). Simpson claims that the MCHR, BCHR, MCHR, JCHR, and ALHR failed to interview him, constituting the adverse employment action. Knowing that prospective employers may not interview them would deter reasonable employees from pursuing litigation over alleged discrimination. Taking Simpson's allegations as true, Simpson alleges the second element. He must, however, also allege the final element—causality.

"To establish a causal connection, a plaintiff must show that the decision-makers were aware of the protected conduct and that the protected activity and the adverse action were not wholly unrelated." *Gupta v. Fla. Bd. of Regents*, 212 F.3d 571, 590 (11th Cir. 2000). As Simpson alleges, the county directors each make "their own independent

hiring decision." (Doc. 7 at 3.) Simpson must show that each director or each HR Department was aware of his lawsuit; he has done this for five defendants. Simpson alleges that "Jefferson County DHR personnel had given prior depositions due to Simpson's prior lawsuit, therefore, [JCHR] personnel had known that Simpson was asserting 'disability' claims . . . ." (Doc. 1 at 6.) Simpson also alleges that Defendant Buckner, the ALHR director knew of the previous lawsuit. (Doc. 1 at 10.) Simpson finally alleges that Defendant Costa,[5] the Etowah County HR Director, knew of his protected conduct because Costa participated in deposition for the prior lawsuit. (Doc. 1 at 9.) Though Simpson alleges that the JCHR, the ALHR, Buckner, and Costa knew of his lawsuit, he fails to allege that the other defendants had the requisite knowledge of his past lawsuit. Yet construing Simpson's *pro se* allegations generously, MCHR also had the requisite awareness, as he named it a defendant in his previous suit. (Doc. 13-2 at 49.)

---

[5]Though Simpson was not on the register for Etowah County, possibly rendering him ineligible for interviews, he alleges that he sought a job through Costa and that Costa hired someone else who was not on the register. (Doc. 1 at 8-9.) At this stage, Simpson has alleged the elements of retaliation against Costa.

Simpson, in sum, makes out a prima facie retaliation case under the Rehabilitation Act against ALHR, JCHR, MCHR, Costa, and Buckner. He does not, however, plead any other Defendant's requisite awareness of his protected conduct, the lawsuit.

C.   42 U.S.C. § 1983.

Defendants first argue that immunity applies to the HR Departments and the individuals in their official capacities. They are immune. *See Quern v. Jordan*, 440 U.S. 332, 342 (1979) (holding that Congress did not abrogate the states' immunity by enacting Section 1983). Defendants next argue that Simpson's Section 1983 claim against the individuals in their own capacities fails because Simpson does not establish that Defendants violated any underlying federal right. They maintain the section provides for liability against persons—not departments, and Simpson does not allege any personal involvement by the individual defendants. (Doc. 13 at 19, 20, 23.)

Plaintiffs alleging Section 1983 violations must prove that they were "deprived of a federal right by a person acting under color of state law." *Griffin v. City of Opa-Locka*, 261 F.3d 1295, 1303 (11th Cir. 2001). Though Simpson does not refer to Section 1983 in his original complaint, he

dedicates two sentences to the claim in his amended complaint:

- This is a suit authorized and instituted pursuant to 42 U.S.C. § 1983 and the Fourteenth Amendment to the Constitution of the United States; and

- Simpson is abiding to asserting procedure 42 U.S.C. § 1983.

(Doc. 7 at 3.)

Simpson claims Defendants violated federal rights provided by the Rehabilitation Act, the FLSA, and the Fourteenth Amendment. But a "plaintiff may not maintain a section 1983 action in lieu of-or in addition to-a Rehabilitation Act or ADA cause of action if the only alleged deprivation is of the employee's rights created by the Rehabilitation Act and the ADA." *Holbrook v. City of Alpharetta, Ga.*, 112 F.3d 1522, 1531 (11th Cir. 1997). Simpson has alleged a plausible retaliation claim against several defendants under the Rehabilitation Act, but not the FLSA. The Fourteenth Amendment is thus his only avenue. He, however, scarcely addresses the Fourteenth Amendment. Besides the above-quoted allegation, he mentions the Fourteenth Amendment once: "Simpson is asserting his Fourteenth Amendment to bring suit . . . ." (Doc. 7 at 2.) He offers nothing else to

indicate that Defendants have violated any of the his protected Fourteenth Amendment rights. *See Bd. of Regents of State Colleges v. Roth*, 408 U.S. 564, 569-70 (1972) (specifying the protections of the Fourteenth Amendment).

Regardless, Simpson must also establish that a person acting under state law deprived him of his rights. "A state, a state agency, and a state official sued in his official capacity are not 'persons' within the meaning of § 1983, thus damages are unavailable." *Edwards v. Wallace Cmty. Coll.*, 49 F.3d 1517, 1524 (11th Cir. 1995). The HR Departments are all state agencies, falling outside the statute. *See Ex parte Trawick*, 959 So. 2d 51, 55 (Ala. 2006).

The individual HR Directors are, of course, persons under the statute. But Simpson must also allege that the directors, as supervisors of their agencies, personally participated in the alleged retaliation or the unspecified constitutional violation. *See Brown v. Crawford*, 906 F.2d 667, 671 (11th Cir. 1990) ("Supervisory liability occurs [] when the supervisor personally participates in the alleged constitutional violation . . . .") He does not. Simpson alleges personal interaction with two defendants: "Jon

Costa started screaming at Simpson why are asking me these questions . . . ." (Doc. 1 at 9.) And Buckner said "'why would we hire someone who sued us' to Simpson personally . . . ." (Doc. 1 at 10.) Except for Simpson's adding individual defendants as parties in the amended complaint, no individual defendant's name appears again in either the complaint or his amended complaint. Scarcely naming the individual defendants, Simpson does not allege personal participation: He does not allege how or when the directors decided not to interview him. No constitutional violation appears from these two allegations. His complaints, in sum, fail to allege any Section 1983 violation.

    D.    *Ex parte Young*.

Defendants argue that the *Ex parte Young* exception to immunity does not apply to the individuals immune from Simpson's FLSA and Section 1983 claims. *Ex parte Young* provides an exception to immunity "for suits against state officers seeking prospective equitable relief to end continuing violations of federal law." *Fla. Ass'n of Rehab. Facility, Inc. v. State of Fla. Dept. of Health & Rehab. Serv.*, 225 F.3d 1208, 1219 (11th Cir. 2000). *Ex parte Young* provides an exception for actions against state officers not

state agencies. The doctrine thus does not apply to the HR Departments. Against individual officers "*Ex parte Young* applies to cases in which the relief against the state official directly ends the violation of federal law . . . .[It does not apply to] cases in which federal law has been violated at one time or over a period of time in the past." *Fla. Ass'n of Rehab*, 225 F.3d at 1219. Simpson seeks a declaratory judgment, a permanent injunction, reinstatement, and compensatory damages[6] because Defendants did not interview him: "As from the date of December 14, 2009 when the lawsuit was ended, until August 1, 2010 when Simpson came off the register, Simpson has yet to be interviewed again." (Doc. 1 at 3.) Simpson admits he had to be on the employment register to receive job interviews. (Doc. 1 at 8.) He came off the register in August 2010. Even if Defendants violated federal law by failing to interview him, no continuing violation exists. Simpson may thus not use *Ex parte Young* to receive injunctive relief.

V. Conclusion.

For the reasons stated above, the motions to dismiss (Dos. 6, 13) are GRANTED for all Defendants as to Simpson's FLSA and Section 1983 claims

---

[6]Simpson withdrew his request for punitive damages. (Doc. 7 at 5.)

and to Defendants MBCHR, BCHR, Johnson, Wells, Sellers, and Muscolino on Simpson's retaliation claims under the Rehabilitation Act. The motions are DENIED regarding Defendants ALHR, JCHR, MCHR, Buckner, and Costa as to Simpson's retaliation claims under the Rehabilitation Act. A separate order conforming with this opinion will be entered.

Done this 25th day of May 2011.

*[signature]*
L. SCOTT COOGLER
UNITED STATES DISTRICT JUDGE
159890