

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
WESTERN DIVISION

SAMMY EDWARD SIMPSON,           )
                                )
          Plaintiff;            )
                                )
     vs.                        )          7:10-cv-3084-LSC
                                )
ALABAMA DEPARTMENT OF           )
HUMAN RESOURCES, et al.,        )
                                )
          Defendants.           )

MEMORANDUM OF OPINION

## I. Introduction

Before the Court are cross-motions for summary judgment, as well as a series of miscellaneous motions filed by Plaintiff after the submission of the summary-judgment motions. Plaintiff Sammy Simpson filed a motion for summary judgment on August 4, 2011. (Doc. 34.) Defendants filed their motion for summary judgment on September 14, 2011. (Doc. 45.) On September 16, 2011, Plaintiff filed a motion to clarify. (Doc. 47.) On October 26, 2011, Plaintiff filed four additional motions: a motion to compel (Doc. 48), a motion for extension of time (Doc. 49), a motion to take depositions (Doc. 50), and a motion for interrogatories (Doc. 51). The Court set these motions for a hearing, which was held on November 29, 2011.

At the November 29 hearing, the parties discussed the various motions at length. Following Plaintiff's explanation that the relief sought in his motion to clarify (Doc 47) was simply for the Court to consider his opposition to some of Defendants' factual statements, the Court granted the motion to that extent. The Court also granted in part Plaintiff's motion to supplement interrogatories (Doc. 51), ordering Defendants to respond with the dates of Trish Muscolino's employment with the Jefferson County Department of Human Resources. The Court then indicated that—although the discovery period had elapsed—the Court would consider the Plaintiff's remaining motions for discovery alongside the summary-judgment motions, and would grant them if justice so required. The Court now takes up these matters for consideration.

## II. Facts[1]

Plaintiff Sammy Edward Simpson is a social worker licensed with the Alabama State Board of Social Work Examiners. He received his bachelor's degree in social work, with special honors, from Jacksonville State University. Soon after graduating

---

[1] The facts set out in this opinion are gleaned from the parties' submissions of facts claimed to be undisputed, their respective responses to those submissions, and the Court's own examination of the evidentiary record. All reasonable doubts about the facts have been resolved in favor of the nonmoving party. *See Info. Sys. & Networks Corp. v. City of Atlanta*, 281 F.3d 1220, 1224 (11th Cir. 2002). These are the "facts" for summary judgment purposes only. They may not be the actual facts. *See Cox v. Adm'r U.S. Steel & Carnegie Pension Fund*, 17 F.3d 1386, 1400 (11th Cir. 1994).

he was hired to work with the Department of Human Resources ("DHR") of Marshall County. About four months later he was approached by the County's DHR Director, Wayne Sellers, who had been informed that Plaintiff was in an intimate relationship with a DHR client. Plaintiff admitted meeting the woman during a previous internship and having a relationship with her, but claimed he had been unaware of her connection to the Marshall County DHR. Because terminating Plaintiff would have barred him from future DHR employment, Sellers offered Plaintiff the option of resigning voluntarily instead of being fired, in the hopes that he would be able to obtain employment in another county. Plaintiff tendered his resignation.

After leaving the Marshall County DHR, Plaintiff was briefly employed as a treatment aide at the Bridge Residential Program for children. He worked there for just under a week, and then quit to take a better-paying social worker position at Crossville Nursing Home. His employment there was also short-lived, however; within six months of starting at Crossville, Plaintiff was terminated for improperly transporting one of the Nursing Home's residents.

From the time that he resigned from the Marshall County DHR, Plaintiff sought employment with DHR offices in various counties. Although he was

interviewed several times, he was not successful in being hired. On November 21, 2006, he filed a lawsuit against the Alabama DHR, as well as several counties' departments of human resources, alleging that his failure to secure a position was the result of disability discrimination in violation of the Rehabilitation Act. His case was dismissed in March of 2008 when summary judgment was granted in favor of the defendants. Plaintiff appealed to the Eleventh Circuit, which affirmed the dismissal of his case in *Simpson v. Alabama Dept. of Human Resources*, 311 Fed. Appx. 264 (11th Cir. 2009). Plaintiff then petitioned the Supreme Court for certiorari, which was denied in December of 2009.

While his discrimination case and its appeal were pending, Plaintiff's name remained on the Alabama State Personnel Register, and he was eligible for interviews with several counties. Following his lawsuit, no department interviewed him for the positions that he sought. Plaintiff regularly received notices informing him that he was not selected, but that he would remain on the list for consideration for future openings. In early April 2010, Plaintiff contacted the Alabama State Personnel Department and received information about who had been hired. Plaintiff considers himself to be better qualified than those that were chosen.

Plaintiff then brought this suit in November 2010, alleging that his failure to be interviewed or hired was due to retaliation against him for bringing his earlier lawsuit. His *pro se* complaint in this action, as amended, names as defendants the Alabama DHR and several counties' DHR offices, as well as their directors, and makes claims under 42 U.S.C. § 1983, the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201 *et seq.*, and the Rehabilitation Act, 29 U.S.C. § 701 *et seq.*

Defendants filed a motion to dismiss the amended complaint, which was granted in part and denied in part on May 25, 2011. (Docs. 26 & 27.) The only claims still at issue are Plaintiff's claims for retaliation under the Rehabilitation Act against the State of Alabama DHR, the Jefferson County DHR, the Marshall County DHR, Nancy Buckner (Director of the Alabama DHR), and Jon Costa (Director of the Etowah County DHR).

## III. Standard.

Summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." FED. R. CIV. P. 56(c). The party moving for summary judgment "always bears the initial responsibility of informing the district

court of the basis for its motion, and identifying those portions of [the evidence] which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The movant can meet this burden by presenting evidence showing that there is no genuine dispute of material fact, or by showing that the nonmoving party has failed to present evidence in support of some element of its case on which it bears the ultimate burden of proof. *Celotex*, 477 U.S. at 322-23. In evaluating the arguments of the movant, the court must view the evidence in the light most favorable to the nonmoving party. *Mize v. Jefferson City Bd. of Educ.*, 93 F.3d 739, 742 (11th Cir. 1996).

Once the movant has met its burden, Rule 56(e) "requires the nonmoving party to go beyond the pleadings and by her own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" *Celotex*, 477 U.S. at 324 (quoting FED. R. CIV. P. 56(e)). "A factual dispute is genuine only if a 'reasonable jury could return a verdict for the nonmoving party.'" *Info. Sys. & Networks Corp. v. City of Atlanta*, 281 F.3d 1220, 1224 (11th Cir. 2002) (quoting *United States v. Four Parcels of Real Property*, 941 F.2d 1428, 1437 (11th Cir. 1991)).

## IV.   Analysis

The Court first addresses Defendants' summary-judgment motion. Defendants contend that some of Plaintiff's claims are barred by the statute of limitations, and that his circumstantial evidence fails under the *McDonnell Douglas* burden-shifting framework. Plaintiff asserts that he possesses direct evidence in addition to circumstantial evidence, so the Court addresses this argument as well.

### A. Untimeliness of Plaintiff's Claims

Defendants argue that most of Plaintiff's claims are barred under the statute of limitations. In their brief, Defendants repeatedly reference the limitations period for § 1983 actions (Doc. 39 at 16-18), although Plaintiff's §1983 claims have all been dismissed. But claims brought under the Rehabilitation Act—like §1983 claims—borrow their limitations period from the most analogous state-law statute of limitations. *See Everett v. Cobb County School Dist.*,138 F.3d 1407, 1409 (11th Cir. 1998). In this case, Alabama's two-year period for personal injury actions, found in ALA. CODE § 6-2-38(l), supplies the limitations period. *See Powell v. Thomas*, 643 F.3d 1300, 1303 (11th Cir. 2011).

Plaintiff appears to concede that the appropriate limitations period is two years; indeed, his complaint acknowledges repeatedly that ALA. CODE § 6-2-38(l) supplies

the relevant statute of limitations. (Doc. 1 ¶¶ 2, 10.) Nevertheless, he urges the Court to "apply discretion to apply[] the 3 year willful statu[t]e in the FLSA" instead of the two-year limit. (Doc. 44 at 16.) He argues that this three-year limitations period should be chosen instead because he "need[s] time-and-a-half accommodations due to [his] speed deficit diagnosis," a "disability [that] does not disappear just because of him being in federal court." (Doc. 44 at 4.) The Court is not free, however, to apply the limitations periods from other statutes willy-nilly; even if Plaintiff's FLSA claims were still active, that three-year period would only be available upon a showing of a willful FLSA violation, and even then would apply only to his FLSA claims. For Plaintiff's existing Rehabilitation Act claims, this Court has no choice but to analyze them under the applicable two-year period.

The limitations period begins to run from the time that a plaintiff "know[s] or should know (1) that [he has] suffered the injury that forms the basis of [his] complaint and (2) who has inflicted the injury." *Chappell v. Rich*, 340 F.3d 1279, 1283 (11th Cir. 2003). In the context of a retaliation claim, not only must a plaintiff have knowledge of the adverse employment action itself, he must be "reasonably put on notice that his [protected activity] caused the adverse employment action." *Hargett v. Valley Fed. Sav. Bank*, 60 F.3d 754, 765 (11th Cir. 1995).

In the present case, Plaintiff's knowledge of the adverse employment actions was supplied by the written non-selection notices he regularly received from Defendants. "The general rule is that a cause of action accrues . . . when the plaintiff has a right to enforce his claim." *Dore v. Kleppe*, 522 F.2d 1369, 1373 (5th Cir. 1975).[2] Plaintiff's knowledge of the possible connection to his previous lawsuit did not change from the time he began receiving the notices to the time that he finally brought suit.[3] As such, Plaintiff's right to sue arose as he received those notices, with each non-selection notice starting its own two-year window in which to file a complaint concerning his failure to be hired from that register. Because Plaintiff filed this action

---

[2] The Eleventh Circuit, in *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir.1981), adopted as binding precedent the decisions of the former Fifth Circuit rendered prior to October 1, 1981.

[3] In his various submissions to the Court, Plaintiff appears to argue that the limitations period should be deemed to begin from when his appeals in the earlier suit were exhausted, or else from the time that he discovered the qualifications of those who had been hired instead of him. Both arguments are misplaced. The fact that Plaintiff's earlier suit was still on appeal is irrelevant to whether he was retaliated against for having brought it. Nor are the identities of those chosen relevant, since Plaintiff was already well aware from the non-selection notices that others had been selected. The only circumstance reported by Plaintiff which has any possible bearing is the fact that on April 12, 2010, within weeks of his request to the Alabama Personnel Department about the number of hired social workers, Plaintiff was placed on "inactive status" for failure to return a form concerning his availability. (Doc. 35-5 at 16-17.) Plaintiff maintains that he did send the form, and that the timing of the change should be viewed with suspicion. But even assuming that Plaintiff submitted the required form, he presents nothing to show this was anything more than a clerical error. Even viewing all reasonable inferences in Plaintiff's favor, no one could reasonably say that his awareness of possible retaliation arose from that act, or that the statute of limitations should be calculated from that point.

on December 22, 2010, any that predate December 22, 2008, are barred by the statute of limitations.

The evidence indicates that only two of the notices sent to Plaintiff fall within the two-year window preceding this lawsuit: the ones pertaining to registers used by Jefferson County DHR in March and May of 2009. Plaintiff's claims arising from these two notices are timely, and Defendants concede that they are "not time barred." (Doc. 39 at 19.) The remainder of Plaintiffs claims, however, are barred by the statute of limitations, and thus due to be dismissed. In the interest of thoroughness, however, the Court will continue the analysis of all of Plaintiff's claims below.

**B. Lack of Direct Evidence**

Before analyzing Plaintiff's circumstantial evidence under the *McDonnell Douglas* framework, the Court first addresses Plaintiff's contention that he "has direct evidence of [r]etaliation" in addition to his circumstantial evidence. (Doc 34 at 11.) Eleventh Circuit precedent is clear that "only the most blatant remarks, whose intent could mean nothing other than to discriminate on the basis of some impermissible factor[,] constitute direct evidence of discrimination." *Wilson v. B/E Aerospace, Inc.* 376 F.3d 1079, 1086 (11th Cir. 2004) (internal quotations omitted).

A careful searching of the record reveals that the only remark brought up by Plaintiff that could possibly meet this standard is the question allegedly asked by Nancy Buckner: "[W]hy would we hire someone who sued us[?]" But although this remark is recounted in Plaintiff's original complaint (Doc. 1 at 10) as well as his motion for summary judgment (Doc. 34 at 13), there is no other support for this statement having been made. The Court cannot simply rely on Plaintiff's complaint and brief, since "[s]tatements of fact in a party's brief, not in proper affidavit form, cannot be considered in determining if a genuine issue of material fact exists." *Helmich v. Kennedy*, 796 F.2d. 1441, 1443 (11th Cir. 1986). Instead, the Court can rely only on facts which are properly supported by the evidence, and "set forth by affidavit or otherwise." *Lewis v. Casey*, 518 U.S. 343, 358 (1996).

Plaintiff does not provide a citation to an affidavit or deposition—either of himself or Ms. Buckner—to substantiate this remark, as required by the Federal Rules of Civil Procedure. *See* FED. R. CIV. P. 56(c)(1) ("A party asserting that a fact cannot be or is genuinely disputed must support the assertion by citing to particular parts of materials in the record . . . ."). Although the Court on its own "**may** consider other materials in the record," FED. R. CIV. P 56(c)(3) (emphasis added), this would not assist Plaintiff here. His assertion is contradicted, not supported, by Ms. Buckner's

affidavit. (Doc. 40-1 at 2-3.) It is also belied by his own argument; Plaintiff claims this statement was made during an interview with Ms. Buckner in July of 2006. His discrimination suit, however, was not filed until later that year, on November 21, 2006. Aside from this single unsubstantiated statement, the Plaintiff offers nothing which could conceivably be considered direct evidence. Accordingly, the Court will proceed below using the approach for evaluating circumstantial evidence.

### C. Analysis of Plaintiff's Claims under *McDonnell Douglas*

As noted above, the only claims still active are Plaintiff's claims for retaliation brought under the Rehabilitation Act, 29 U.S.C. § 701 *et seq*. The anti-retaliation provisions of the Rehabilitation Act are borrowed from §12023(a) of the ADA. *See* 29 U.S.C. §§ 791(g), 793(d), 794(d). Retaliation claims under the ADA are in turn assessed "under the same framework . . . employ[ed] for retaliation claims under Title VII." *Standard v. A.B.E.L. Services, Inc.*, 161 F.3d 1318, 1328 (11th Cir.1998).

Retaliation claims that rely on circumstantial evidence are analyzed using the burden-shifting paradigm established in *McDonnell Douglas Corp. v. Green*, 411, U.S. 792, 93 (1973). *See Bryant v. Jones*, 575 F.3d 1281, 1307 (11th Cir.2009), *Goldsmith v. City of Atmore*, 996 F.2d 1155, 1162–63 (11th Cir.1993). Under the *McDonnell Douglas* framework, the plaintiff first bears the burden of establishing his prima facie case. To

make out a prima facie case of retaliation, a plaintiff must "prove that he engaged in statutorily protected activity, he suffered a materially adverse action, and there was some causal relation between the two events." *Goldsmith v. Bagby Elevator Co., Inc.* 513 F.3d 1261, 1277 (11th Cir. 2008). *See also Weeks v. Harden Mfg. Corp.*, 291 F.3d 1307, 1311 (11th Cir. 2002).

Once that prima facie case has been demonstrated, *McDonnell Douglas* next requires defendants to meet their "burden of producing a legitimate, non-discriminatory reason for the challenged employment action." *Denney v. City of Albany*, 247 F.3d 1172, 1183 (11th Cir. 2001). Finally, "[i]f such a reason is produced, a plaintiff then has the ultimate burden of proving the reason to be a pretext for unlawful discrimination." *Id.*

### 1. Plaintiff's Prima Facie Case

Of the three ingredients in Plaintiff's prima facie case, only one is genuinely in dispute here. Defendants do not contest the status of Plaintiff's earlier lawsuit as a protected activity; nor do they deny that refusing to interview Plaintiff constitutes an adverse employment action,[4] since denying interviews "could well dissuade a

---

[4] The "adverse employment action" element *is* challenged to the extent that Defendants argue that there was no adverse action taken within the limitations period. But as noted above, the Court is temporarily setting aside the statute of limitations problems for the sake of this analysis.

reasonable worker from making or supporting a charge of discrimination." *Burlington N. & Santa Fe Ry Co. v. White*, 548 U.S. 53, 57 (2006). Instead, Defendants deny the link between them, and challenge the third requirement: that there be "some causal relation between the two events." *Goldsmith*, 513 F.3d at 1277.

To establish that causal relationship, a plaintiff must show two things: "that the decision-makers were aware of the protected conduct and that the protected activity and the adverse action were not wholly unrelated." *Gupta v. Florida Bd. of Regents*, 212 F.3d 571, 590 (11th Cir. 2000). Defendants attack both aspects of this requirement. First, they argue that several of the relevant decision-makers knew nothing of the Plaintiff's lawsuit. Second, Defendants maintain that their failure to interview Plaintiff was not in any way related to his earlier lawsuit.

### i. Knowledge of Decision Makers

Defendants contend that Nancy Buckner and the Jefferson County DHR were unaware of Plaintiff's earlier lawsuit at any relevant time. Plaintiff disputes this point, but he fails to provide citations to the record in support for his position. He seemingly acknowledges this shortcoming, as most of his motions for additional discovery are aimed at establishing their knowledge of his discrimination case. This was reinforced

at the hearing held on November 29, 2011, where the justification offered by Plaintiff for his numerous discovery requests was simply to demonstrate this.

One such request, seeking the dates of Trish Muscolino's employment with the Jefferson County DHR (part of Doc. 51), was granted on the record during the hearing. The Court ordered Defendants to produce responses to those interrogatories in a timely fashion. Since the hearing, Plaintiff has filed nothing based upon those responses, leading the Court to believe that the issue is resolved without needing further discovery.

Aside from the individuals who were deposed in the course of his earlier suit, Plaintiff has not shown that Defendants were aware of it. But even if it were established that all the Defendants had this knowledge, Plaintiff's claims would still fail for the reasons below.

### ii. Relation of Protected Activity & Adverse Action

Even if the Court were to assume that Defendants knew of Plaintiff's earlier suit, such knowledge is not alone sufficient; Plaintiff still must show "that the protected activity and the adverse action were not wholly unrelated." *Gupta*, 212 F.3d at 590. As the parties both acknowledge, it is possible for a plaintiff to meet this burden simply by demonstrating the closeness in time between the protected activity

and the adverse action. *See id.* ("For purposes of a prima facie case, 'close temporal proximity' may be sufficient to show that the protected activity and the adverse action were not 'wholly unrelated.'") But to establish a causal connection using temporal proximity alone, "the temporal relationship between the protected activity and the adverse employment action must be 'very close.'" *Brown v. Alabama Dept. of Transp.* 597 F.3d 1160, 1182 (11th Cir. 2010) (quoting *Thomas v. Cooper Lighting, Inc.*, 506 F.3d 1361, 1364 (11th Cir.2008)).

Although Plaintiff contends that the timing in this case was sufficiently close, he also states that he does not rely on temporal proximity alone, at least with regard to Jefferson County DHR. Instead, he argues that the non-selection notices he received from them form a "pattern of retaliatory conduct" which bridges the distance in time between the protected activity and the adverse action. In support, he cites to a Tenth Circuit case, *Marx v. Schnuck Markets, Inc.*, 76 F.3d 324 (10th Cir. 1996). In *Marx*, the court stated that the temporal proximity requirement should "not be read too restrictively where [a] pattern of retaliatory conduct begins soon after the [protected activity] and only culminates later in actual discharge." *Id.* at 329. Even if *Marx* were controlling, it is easily distinguishable. The plaintiff in *Marx*, after filing an FLSA suit, was repeatedly "written up," then demoted, harassed through discovery,

and ultimately terminated. *Id.* In contrast, Plaintiff's "pattern of retaliatory conduct" consists of nothing but the non-selection notices themselves, unaccompanied by any such overt acts of retaliation. Additionally, each non-selection notice constitutes an independent adverse action by itself, not a pattern of retaliation leading up to one.

Plaintiff has failed to show by proper citation to the record that *any* of these notices were temporally proximate to the filing of his lawsuit. Even if the Court were to accept Plaintiff's argument that the notices form a retaliatory pattern, the beginning of the pattern would still have to be sufficiently close in time to the filing of Plaintiff's suit; the quoted language from *Marx*, by its own terms, only applies if the pattern of retaliation "begins soon" after the protected activity. *Id.* After consulting the briefs and the record, it appears that the closest notice from the Jefferson County DHR was sent over a year after Plaintiff filed his first suit,[5] in December of 2007. (Doc. 40-16.) A year is manifestly not close enough in time. *See, e.g., Drago v. Jenne*, 453 F.3d 1301, 1308 (11th Cir. 2006) ("We are not persuaded that three months . . . is sufficiently

---

[5] To close this temporal gap, Plaintiff maintains that the taking of his deposition in December of 2007 constitutes a separate protected activity. Defendants concede that "[g]iving deposition testimony can be a protected activity."(Doc. 39 at 29.) In the cases cited, however, it was held that giving deposition testimony in a coworker's case constituted a protected activity for the one being deposed. *See Merritt v. Dillard Paper Co.*, 120 F.3d 1181, 1183 (11th Cir. 1997). The same logic does not apply to a Plaintiff giving a deposition in his own case. The parties have offered no support for the position that giving a deposition in one's own case constitutes an independent protected activity that is somehow distinct from the case itself.

proximate to show causation.") With or without his retaliatory pattern theory, Plaintiff has failed to show temporal proximity with regard to the Jefferson County DHR.[6]

Plaintiff has not shown temporal proximity for any of the other Defendants, either. His claims against the Marshall County DHR are based on the hiring of Kristy Fricks in August of 2007, more than eight months after his discrimination suit was filed. He also points to the Jon Costa's hiring of Johnna Traffanstedt in 2010, several years after his original case. Both are clearly too far removed.

Plaintiff cannot show a causal connection with regard to Nancy Buckner, either, because "at a minimum, a plaintiff must show that the adverse act *followed* the protected conduct." *McCann v. Tillman*, 526 F.3d 1370, 376 (11th Cir. 2008) (quoting *Griffin v. GTE Fla., Inc.*, 182 F.3d 1279, 1284 (11th Cir.1999)) (internal brackets omitted, emphasis added). Plaintiff has failed to meet this minimum threshold. By his own account, his interview with Ms. Buckner occurred in July of 2006 (Doc. 34 at 13), and later that same month he received a non-selection notice regarding that position.

---

[6] Although the Court finds temporal proximity to be lacking, the significance of any in this particular case would also be diminished by the fact that Plaintiff was experiencing denials before, in addition to after, the commencing of his earlier suit. Although Plaintiff alleged in that suit that these earlier denials were discriminatory, he failed to show that they were improper. The fact that they did not start happening only he filed suit tends to discredit the notion that they stemmed from that same lawsuit.

(Doc. 35-5 at 19.) Because he filed his discrimination lawsuit several months *later*, in November of 2006, that hiring decision could not possibly have been influenced by Plaintiff's future lawsuit.

Plaintiff has failed to show, by temporal proximity or other means, that there is any causal connection between his earlier lawsuit and his failure to be interviewed or hired by Defendants. As such, he fails to make out his prima facie case. For the sake of completeness, however, the Court will continue with the remaining steps of the analysis.

### 2. Legitimate, Non-Discriminatory Reasons

Assuming for the sake of argument that Plaintiff had put forward a sufficient prima facie case, the burden would then shift to Defendants to produce a legitimate, non-discriminatory reason for their hiring decisions. *Denney*, 247 F.3d at 1183. The employer's burden at this stage is "exceedingly light." *Perryman v. Johnson Prods. Co.*, 698 F.2d 1138, 1142 (11th Cir. 1983). If the employer articulates one or more such reasons, even if it does not "persuade the court that it was actually motivated by the proffered reasons . . . then the presumption of discrimination is rebutted, and the burden of production shifts to the plaintiff to offer evidence that the alleged reason of

the employer is a pretext for illegal discrimination." *Brown*, 597 F.3d 1160, 1174 (11th Cir. 2010) (internal quotes omitted).

Defendants proffer several reasons for not interviewing Plaintiff. For Jefferson County DHR, Defendants give several reasons based on the deposition testimony (Doc. 40-13) and affidavit (Doc. 40-3) of Ms. Terry Beasley, who conducted multiple interviews with Plaintiff. Ms. Beasley noted that Plaintiff showed up to his interviews in inappropriate attire. Ignoring the dress code, he interviewed at various times in shower shoes, tennis shoes, and blue jeans. (Doc. 43-13 at 7–8.) He didn't fully answer some of the questions that were presented. (*Id.*) He complained to Mrs. Beasley of his previous jobs, and told her of his short-lived employment at Marshall County DHR and the Crossville Nursing Home. In her opinion, these incidents failed "to suggest reliability and stability in a potential employee to maintain his employment for more than six months." (Doc. 40-3 at 4.) Plaintiff's self-described work history, combined with his inappropriate presentation for the interviews and his "inability or unwillingness to appropriately answer the questions" convinced Ms. Beasley that Plaintiff was "less than desirable to be considered as a serious candidate for employment" with the Jefferson County DHR. (*Id.*) Additionally, because he had interviewed several times, Plaintiff was eventually able to be "considered based on

previous interviews" instead of having to conduct a new interview with him for each new opening. (Doc. 40-7 at 4.)

Like Plaintiff's interviews in Jefferson County, Plaintiff's interview with Jon Costa for a position with the Etowah County DHR gave rise to serious concerns. Plaintiff's excessive nervousness prompted doubtful questions as to how he would perform in the "very difficult and confrontational situations" that a social worker would likely encounter. (Doc. 40-15 at 7.) Mr. Costa noted that on his "criminal background questionnaire, he had put something down about having used drugs." (Doc. 40-15 at 5.) Plaintiff also "provided a lot of unanswered questions" in the interview, which his interviewers found unsettling. (*Id.*) Then, when asked about what he viewed as his weaknesses, Plaintiff grew defensive and stated that "he had no weaknesses," which is "not a typical response in interviewing people." (Doc. 40-15 at 6.) After Plaintiff's interview, Jon Costa and the others "felt that he was not suitable for the work" in Etowah County. (Doc. 40-15 at 7.)

As for the Marshall County DHR, Defendants offer a host of reasons for Plaintiff's failure to be rehired. Chief among them is the fact that Plaintiff had already been employed there and was forced to resign. He had admitted to having sex with a DHR client. (Doc. 40-12 at 8.) Additionally, his supervisors had concerns about his

"problems paying attention or staying focused with some of the clients," and noted that he was interrupting others. (*Id.* at 8.) It had also been reported that Plaintiff "was using some profane language with a couple of the female employees" prior to his departure, for which he was informally reprimanded.[7] (*Id.*)

Although Defendants appear to have discharged their burden here, Plaintiff makes several objections to the reasons they offer. Plaintiff would have the Court find that, due to his earlier suit, no reasons offered by Defendants can ever justify their failure to interview or hire him. He repeatedly states that "the section 504 Rehabilitation Act does not allow him to be excluded from interviews/activities regardless what state law says." (Doc. 47 ¶ 7.) He elsewhere argues that the "Section 504 Rehabilitation A[ct] clearly says Simpson cannot be excluded from activities/interviews."(Doc. 34 at 6-7.) Plaintiff is mistaken in thinking that the Rehabilitation Act creates an affirmative duty on employers to interview and hire anyone who has previously alleged discrimination because of a disability, regardless of any unrelated objections to his or her suitability. It does not.

---

[7] Although Plaintiff disputes the accuracy of some of the reports about him, their factual accuracy is irrelevant at this stage. An employer's good-faith mistaken belief in the misconduct of an employee is sufficient to meet the employer's burden at this step in the analysis, whether the employee is guilty of the misconduct or not. *See Elrod v. Sears, Roebuck & Co.*, 939 F.2d 1466, 1470 (11th Cir. 1991).

Plaintiff also takes issue with Defendants' characterization of his interviews. While even he concedes that "[t]he interviews were disastrous," (Doc. 44 at 20), he maintains that Defendants are overstating things: "The interview must not have been that bad [because] JCHR did not have to call the police on Simpson." (*Id.*) It goes without saying that a job interview need not require police intervention to provide grounds for an unfavorable employment decision. Defendants have more than met their burden of production at this stage of the analysis.

### 3. Demonstration of Pretext

Once defendants have put forward a legitimate, non-discriminatory reason, the "inquiry 'proceeds to a new level of specificity,' in which the plaintiff must show that the proffered reason really is a pretext for unlawful discrimination." *Joe's Stone Crabs, Inc.*, 296 F.3d at 1273 (quoting *Dep't of Community Affairs v. Burdine*, 450 U.S. 248, 255–56 (1981)). Plaintiff can do this "either directly by persuading the court that a discriminatory reason more likely motivated the employer or indirectly by showing that the employer's proffered explanation is unworthy of credence." *Jackson v. Ala. State Tenure Comm'n*, 405 F.3d 1276, 1289 (11th Cir. 2005) (quotations and citations omitted).

Plaintiff attempts to show pretext based on the qualifications of those that were hired instead of him. By his reckoning, "Simpson is more qualified than 99.9% of those hired." (Doc. 44 at 21.) He engages in a lengthy comparison of qualifications, which Defendants attempt to rebut with an extensive comparison of their own. (Doc. 39 at 46-51.) These competing analyses are largely irrelevant, however, since this Court's "inquiry at the third stage of the *McDonnell Douglas* analysis . . . is not concerned with [Plaintiff's own] belief that [he] was more qualified *or* whether we could conclude that [he] was better qualified than [those that were hired]." *Brooks v. County Comm'n of Jefferson County*, 446 F.3d 1160, 1163-64 (11th Cir. 2006). Instead, to successfully show pretext based on qualifications alone, Plaintiff "must show that the disparities between the successful applicant's and [his] own qualifications were 'of such weight and significance that no reasonable person, in the exercise of impartial judgment, could have chosen the candidate selected over the plaintiff.'" *Id.* at 1163 (quoting *Cooper v. S. Co.*, 390 F.3d 695, 732 (11th Cir. 2004)).

Given this standard, the Court need not parse in great detail the point-by-point comparisons between Plaintiff and each of the successful applicants. For many of them, such as the Jefferson County DHR hires from November 2009 and February 2010, Plaintiff simply lists their education and licensing, and concludes—ostensibly

because of his fifteen graduate hours—that "Simpson is 'more qualified' than all" of the others. (Doc. 34 at 7–10.) He does not identify any potential obstacles to their employment, nor does he address his own, on the grounds that the "EEOC only uses academic qualifications to prove being more qualified." (Doc. 44 at 6.)

Plaintiff goes beyond academics, however, in his comparison of Johnna Traffanstedt, who was hired by Jon Costa to work at the Etowah County DHR. Although Plaintiff labels her as a "5 time felon w/ habitual offender status" (Doc. 44 at 10), the record does not support this characterization. The record shows that Ms. Traffanstedt was a registered pharmacy technician whose registration was temporarily put on probation by the Alabama State Board of Pharmacy after she voluntarily disclosed a drug conviction. (Doc. 35-6 at 30.) Although she had been given a five-year suspended sentence and five years of probation, she was released from probation after just two years "[d]ue to good performance." (*Id.*) Plaintiff's confusion about her history appears to stem from five charges that the Board considered, corresponding to five of the reasons for revocation listed in ALA. CODE § 34-23-132. At the time of the Board's decision, Ms. Traffenstedt was in her senior year at Jacksonville State University, majoring in social work.

Plaintiff has not actually shown that Defendants had any knowledge of Ms. Traffenstedt's criminal history, or the probation of her pharmacy technician registration. But assuming they did, the Court cannot say that no reasonable person could have hired her over Plaintiff, especially given Jon Costa's knowledge of Plaintiff's own past drug use, his excessive nervousness, his claim of having "no weaknesses," and his generally poor interview performance. Even if Ms. Traffenstedt's record were as checkered as Plaintiff paints it, it would still be doubtful that "no reasonable person, in the exercise of impartial judgment, could have chosen [Johnna Traffenstedt] over the plaintiff." *Brooks*, 446 F.3d at 1163-64.

Although "a plaintiff in a retaliation case need prove only that retaliatory animus was one factor in the adverse employment decision," *Brown*, 597 F.3d at 1182, Plaintiff has failed to show any evidence of retaliatory animus. None of the evidence he offers can "yield an inference of . . . retaliation." *Id.* at 1183. At this stage of the analysis, "a reason cannot be proved to be 'a pretext for discrimination' unless it is shown *both* that the reason was false, *and* that discrimination was the real reason." *St. Mary's Honor Center v. Hicks*, 509 U.S. 502, 515 (1993). Plaintiff has failed to show either of these things. As such, he cannot rebut the legitimate, non-discriminatory reasons given by Defendants.

## V. Conclusion

Plaintiff has failed to make out a prima facie case of retaliation, and failed to rebut the legitimate, non-discriminatory reasons given by Defendants. In addition, most of his remaining claims are also barred by the statute of limitations. For these three reasons, Defendants' motion for summary judgment (Doc. 45) is due to be GRANTED in all respects. For these same reasons, Plaintiff's motion for summary judgment (Doc. 34) is due to be DENIED.

As noted above in Part IV(C)(1)(i), Plaintiff's remaining discovery requests would make no difference to the Court's decision today, even if they resulted in all that Plaintiff hoped to uncover. Granting such out-of-time discovery would also lead to undue expense and delay for all concerned. Accordingly, Plaintiff's outstanding motions are all due to be DENIED. A separate order consistent with this opinion will be entered.

Done this 20th day of March 2012.

L. SCOTT COOGLER
UNITED STATES DISTRICT JUDGE
[167037]